DOYLE JOHN COOK *et al., Respondents,* v. KING COUNTY, *Petitioner.*

*Christopher T. Bayley, Prosecuting Attorney, William R. Creech, Deputy,* and *Hugh A. McClure,* for petitioner.

*Paul J. Fisher,* for respondents.

JAMES, J.—Plaintiff Doyle John Cook brought this action for damages against defendant King County, claiming personal injuries resulting from the alleged use of excessive force when he was arrested by King County police officers. For pretrial discovery purposes, Cook sought an order compelling King County to produce for his inspection "all reports, investigations and statements from officers, both civilian witnesses and otherwise, in connection with" his claim. King County resisted, claiming that the granting of

Cook's motion would permit the examination of the county sheriff's internal investigation files in violation of the privilege afforded such records by RCW 5.60.060(5), which provides as follows:

A public officer shall not be examined as a witness as to communications made to him in official confidence, when the public interest would suffer by the disclosure.

The trial judge ruled in Cook's favor. We determined that King County had no plain, speedy and adequate remedy by appeal and, pursuant to CAROA 57, granted certiorari.

The record on appeal does not inform us as to the trial judge's reasons for granting Cook's motion. The formal order recites, however, that it is based upon the argument of counsel, "but without examination of files involved." The order requires "the sheriff of King County to make available . . . all statements of witnesses" but provides that they may be inspected only by Cook's attorney. The trial judge struck from Cook's proposed order the requirement that "the investigation report" be made available.

It is the county's position on appeal that the trial judge erred for three reasons. First it is asserted that by RCW 5.60.060(5), internal investigation records of police departments are made absolutely privileged.

██ By its terms, RCW 5.60.060(5) grants only a *conditional* privilege. Confidential communications to a public officer are privileged *only* when the public interest would suffer by their disclosure.

██ The county next asserts that the trial judge's ruling should be overturned because Cook failed to make a showing of good cause as required by CR 34. CR 34 was amended prior to the hearing on Cook's motion, and the language "showing good cause therefor" was eliminated. More importantly, Cook's right to discovery is provided by CR 26 rather than CR 34. CR 26 is to be liberally construed "to eliminate the 'hide and seek' trial practices encouraged by earlier procedures." *McGugart v. Brumback*, 77 Wn.2d 441, 444, 463 P.2d 140 (1969). CR 26(b)(1) authorizes dis-

covery of any matter, not privileged, which may be admissible in evidence or which "appears reasonably calculated to lead to the discovery of admissible evidence." No showing of good cause by Cook was required. *Verrazzano Trading Corp. v. United States,* 349 F. Supp. 1401 (Cust. Ct. 1972).

Finally, the county contends that the trial judge should have first conducted an in camera examination of the pertinent investigatory files before ruling upon Cook's motion. We agree.

■ Although "privilege" is a common-law concept, the granting of testimonial privilege is a recognized function of legislative power. *See generally* 8 J. Wigmore, *Evidence* §§ 2190-97 (J. McNaughton rev. ed. 1961). Any grant of testimonial privilege is necessarily in direct conflict with the essential judicial power to compel the production of evidence. Such power is inherent in the judiciary. *State ex rel. Haugland v. Smythe,* 25 Wn.2d 161, 169 P.2d 706, 165 A.L.R. 1295 (1946).

A legislative grant of testimonial privilege may be absolute or it may be conditional. It may, for example, make "confidential" records inadmissible as evidence at trial but still not beyond the reach of discovery. *Mebust v. Mayco Mfg. Co.,* 8 Wn. App. 359, 506 P.2d 326 (1973). Or, as with RCW 5.60.060(5), the grant of privilege may be conditioned upon a finding that the public interest will suffer by disclosure.

In support of its application for certiorari, the county submitted an affidavit by the county sheriff which asserts that his department utilizes an internal investigation unit to investigate every claim of police misconduct; that the unit's reports are confidential and are submitted only to the sheriff, and that "[o]ne of the most important factors in the success of [the internal investigatory program] has been the assurance that [the] files are confidential—that information furnished whether by civilian or officer, will not be susceptible to disclosure as [a] public record." The sheriff's expressed opinion is "that the public interest in honest and

effective law enforcement, especially in view of recent local history of probes into police involvement in improper conduct, must of necessity outweigh the private interest of a particular private party who has other means available for discovery."

In its brief the county argues that the public interest would suffer by disclosure because:

1. Knowledge that one's candid statements about another officer's performance could readily be discovered in a civil lawsuit would have a chilling effect upon any reports to the sheriff.

2. Law enforcement officers would be reluctant to conduct the type of detailed investigation necessary to the efficiency and good conduct of their department when the files that they build up might be used against them in court.

The substance of Cook's answering argument is that the public's interest in the securing of justice for a victim of police misconduct must be recognized as equal to the public's interest in the effectiveness of the police department's efforts at self-discipline. He cites the ruling in a case involving a conflict of similar interests:

In the real world, . . . [the police department's] arguments may be of some substance. That [the police department's] arguments may have merit, however, is not enough; rather, they must be so meritorious as to overcome the fundamental importance of a law meant to insure each citizen from unconstitutional state action and of the federal rules of discovery meant to insure that no relevant fact remain hidden. What merit [the police department's] arguments have, they clearly lose in the balance. The danger of doing harm to the Milwaukee Police Department by allowing discovery of this file is not nearly so great as the harm that would surely result to the efficacy of our entire legal structure, including the Milwaukee Police Department, if a case such as this were won because the truth was hidden.

*Wood v. Breier*, 54 F.R.D. 7, 13 (E.D. Wis. 1972).

■ As authorized by CR 26(c), the trial judge substantially limited the scope of discovery, but he rejected the county's contention that an in camera examination was

necessary to weighing the conflicting interests. Undeniably, such an exercise of judicial authority will prove difficult. But in cases where governmental privilege is asserted, in camera examination is a function which the judiciary *must* perform. "Judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers." *United States v. Reynolds,* 345 U.S. 1, 9, 97 L. Ed. 727, 73 S. Ct. 528, 32 A.L.R.2d 382 (1953).

The county's asserted need for confidentiality is not frivolous. The unpalatable implication of its plea is, of course, that while a police officer will truthfully report upon a fellow officer's conduct if he knows that his report is confidential, he may not do so if he knows he may be required to give the same testimony in court. But, as recognized in *Wood v. Breier, supra* at 13, such condition of human frailty is "[i]n the real world."

The county's request should have been granted. Accordingly, the trial court is directed to make an in camera examination of the sheriff's investigatory files and to make a finding as to whether the public interest would suffer if the contents of the file are disclosed to Cook.

Remanded.

SWANSON, C.J., and FARRIS, J., concur.